NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000284
29-JUN-2018
08:44 AM

NO. CAAP-16-0000284

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


CAROL L. McKENNA, Plaintiff-Appellant,
v.
ASSOCIATION OF APARTMENT OWNERS OF ELIMA LANI,
a Hawaiʻi nonprofit corporation; CERTIFIED MANAGEMENT, INC.,
dba Certified Hawaiʻi; WELLS FARGO BANK, N.A.; and ROSS ANDALORO,
Defendants/Cross-Claim Defendants/Cross-Claimants-Appellees,
and
GEOFFREY S. KIM and HAWAIIAN ISLES ADJUSTING CO., LLC,
a Hawaiʻi limited liability company;
Defendants/Cross-Claimants/Cross-Claim Defendants,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS,
PARTNERSHIPS, GOVERNMENTAL and OTHER ENTITIES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 11-1-627K)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Reifurth and Chan, JJ.)

This appeal arises from the enforcement of a purported
settlement of a case in which Plaintiff-Appellant Carol L.
McKenna challenged the handling of mold in her residential unit
by Defendants/Cross-Claim Defendants/Cross-Claimants-Appellees
Association of Apartment Owners of Elima Lani; Certified
Management, Inc.; Wells Fargo Bank, N.A.; and Ross Andaloro
(collectively "Appellees"); and Defendants/Cross-Claimants/Cross-
Claim Defendants Geoffrey S. Kim and Hawaiian Isles Adjusting
Co., LLC. Specifically, McKenna appeals, *pro se*, from the
March 10, 2016 Final Judgment entered by the Circuit Court of the

Third Circuit ("Circuit Court").[1]

On October 21, 2014, a settlement conference took place ("Settlement Conference") between McKenna and Appellees to address the remaining claims in McKenna's Second Amended Complaint, filed January 28, 2014, against Appellees.[2]  At the close of the conference, the Circuit Court and the parties went on the record and acknowledged that the parties had reached a settlement and identified and placed on the record the essential terms of the agreement, which the Circuit Court clarified with McKenna, who was present with her then-counsel, Kenneth Ross, and which McKenna expressly agreed to.  One of the essential terms was the subsequent creation and execution of "a settlement agreement with mutual releases and standard settlement terms and a dismissal of the case."

While on the record, the Circuit Court asked Ross if all essential terms of the settlement had been placed on the record, to which Ross affirmatively responded.  McKenna never expressed any apprehension or objection over, or asked questions regarding, the terms of the proposed settlement agreement.

On October 27, 2014, Ross filed a motion to withdraw as counsel for McKenna, citing McKenna's refusal to sign settlement documents.[3]  The Circuit Court granted the motion.

On November 5, 2014, Appellees filed a motion to enforce the settlement agreement ("Motion to Enforce"), requesting that the Circuit Court require McKenna to sign the settlement agreement and stipulation and/or otherwise permit the

---

[1]     The Honorable Melvin H. Fujino presided over entry of the judgment.  The Honorable Elizabeth Strance presided over all other proceedings in the case.

[2]     The dismissal of Kim and Hawaiian Isles Adjusting from the case was reflected in the March 24, 2014 Final Judgment in favor of Defendants Geoffrey S. Kim and Hawaiian Isles Adjusting Co., LLC.  The dismissal of Kim and Hawaiian Isles Adjusting is not challenged in this appeal.

[3]     In his supporting declaration, Ross stated that the morning after the Settlement Conference, on October 22, 2014, McKenna informed him via e-mail and telephone that she had changed her mind and wanted to rescind her agreement to the terms of settlement; that McKenna instructed Ross not to sign any settlement documents; that Ross told McKenna because they had put the settlement agreement on the record, "she could not now 'take it back'"; and that after McKenna still insisted that Ross not sign any settlement documents and Ross repeated he could not do so, McKenna discharged him.

court clerk to execute the document in light of McKenna's refusal to do so, and order a dismissal of the case with prejudice. Attached to the motion was a declaration from counsel for the AOAO and Certified Management, Danielle Degele-Matthews ("Degele-Matthews Declaration"), which attested to, among other things, Appellees' Settlement and Release Agreement draft ("SRA Draft") that was sent to McKenna's counsel. McKenna opposed the motion.

After hearing the motion, the Circuit Court entered an order granting the Motion to Enforce ("February 6, 2015 Order to Enforce"). The Circuit Court found that the parties entered into a binding settlement agreement at the Settlement Conference but found also that the SRA Draft contained terms beyond those material to the settlement, and therefore, struck those terms. The Circuit Court additionally made several findings regarding McKenna's refusal to proceed with the settlement and directed that the clerk of court sign the revised SRA Draft and the stipulation upon its submission by the parties. On March 16, 2015, the Circuit Court entered the "Stipulation for Dismissal With Prejudice of All Claims and All Parties" in which the Chief Clerk of the Third Circuit, Lester D. Oshiro, signed on behalf of McKenna.

On March 10, 2016, the Circuit Court entered the Final Judgment, which dismissed with prejudice all of McKenna's claims in her First Amended Complaint against Kim and Hawaiian Isles Adjusting and all of McKenna's claims in her Second Amended Complaint against Appellees, and which dismissed with prejudice all cross-claims of all defendants against all other defendants. McKenna timely appealed.

On appeal, McKenna alleges that the Circuit Court erred when it enforced the settlement agreement and entered final judgment because (1) the Appellees submitted inadmissible evidence in their Motion to Enforce; (2) there was no meeting of the minds between the parties as to the material terms of the settlement and release agreement;[4] (3) McKenna's and Appellees'

---

[4] McKenna's second, third, and fourth points of error have been consolidated under this second point of error as they all pertain to how the parties reached the settlement and the drafting of the final settlement agreement.

counsel lacked authority under Hawaii Revised Statutes ("HRS") section 605-7 to settle the case on behalf of their respective clients; and (4) there were four claims of attorney misconduct raised by McKenna at the February 6, 2015 hearing on McKenna's Motion to Order Evidentiary Hearing.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we affirm.

(1) In her first point of error, McKenna alleges that the Circuit Court considered inadmissible evidence in the form of the Degele-Matthews Declaration and referenced exhibits in deciding the Motion to Enforce. However, McKenna failed to raise any objection in her opposition to the Motion to Enforce as to the admissibility of the Degele-Matthews Declaration or the referenced exhibits, and, therefore, waived any objection on this issue and, subsequently, her first point. *See Hawaii Ventures, LLC v. Otaka, Inc.*, 114 Hawaiʻi 438, 500, 164 P.3d 696, 758 (2007) ("As a general rule, if a party does not raise an argument at the circuit court level, that argument will be deemed to have been waived on appeal[.]" (quoting *Kemp v. State of Hawaiʻi Child Support Enf't Agency*, 111 Hawaiʻi 367, 391, 141 P.3d 1014, 1038 (2006)) (internal quotation marks and brackets omitted)) .

(2) In her second point of error, McKenna alleges that there was no meeting of the minds and, thus, no binding settlement agreement. McKenna advances three main arguments in support: the final settlement agreement and resulting dismissal with prejudice were not entered into voluntarily and with informed consent, evidenced partially by the fact that the court clerk signed on McKenna's behalf and partially by the Circuit Court's removal of joint drafting provision "#12(c)"; the Circuit Court rewrote the settlement agreement where material terms were in dispute; and the final settlement agreement was materially different than the SRA Draft.

As a species of contract, settlement agreements are governed by principles of contract law, *Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Hawaiʻi 277, 288, 172 P.3d

1021, 1032 (2007), and require mutual assent or a meeting of the minds as to all *material* or *essential* terms of the agreement. *See Honolulu Rapid Transit Co. v. Paschoal*, 51 Haw. 19, 26, 449 P.2d 123, 127 (1968) ("It is a fundamental principle of law that there must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract." (citing *Richardson v. Greesboro Warehouse & Storage Co.*, 26 S.E.2d 897 (1943)).[5] Because this analysis is conducted under an objective standard, determined either explicitly by the parties' language or implicitly from other circumstances, "the purely subjective, or secret, intent of a party in assenting is irrelevant in an inquiry into the contractual intent of the parties." *Standard Mgmt., Inc. v. Kekona*, 99 Hawai'i 125, 134, 53 P.3d 264, 273 (App. 2001).

An agreement "cannot be set aside except on the grounds that would justify rescission." *Assocs. Fin. Servs. Co. of Hawai'i, Inc. v. Mijo*, 87 Hawai'i 19, 28–29, 950 P.2d 1219, 1228–29 (1998) (emphasis omitted) (quoting *Miller v. Manuel*, 9 Haw. App. 56, 63, 828 P.2d 286, 291 (1991)). "Generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." *Id.* at 29, 950 P.2d at 1229 (quoting *Miller*, 9 Haw. App. at 63, 828 P.2d at 291). On the other hand, "a motion to enforce a settlement agreement may not be decided summarily if there is any question of fact as to whether a mutual, valid, and enforceable settlement agreement exists between the parties." *Moran v. Guerreiro*, 97 Hawai'i 354, 371, 37 P.3d 603, 620 (App. 2001).

The bulk of McKenna's second point focuses on the events following the Settlement Conference. However, the proper analysis as to whether there was a meeting of the minds looks to when the parties placed the essential terms of settlement on the

---

[5]    *See also Envy Hawaii LLC v. Cirbin Inc.*, Civil No. 16-00551 ACK-RLP, 2017 WL 5354198, at *2 (D. Haw. Oct. 17, 2017)("A complete settlement agreement requires agreement on all '*material* terms' and 'the intent of the parties to bind themselves.'" (emphasis in original) (quoting *Callie v. Near*, 829 F.2D 888, 891 (9th Cir. 1987)), *report and recommendation adopted*, Civil No. 16-00551 ACK-RLP, 2017 WL 5327451 (D. Haw. Nov. 13, 2017).

record. *See e.g.*, *Goran Pleho, LLC v. Lacy*, No. CAAP-12-0000025, 2016 WL 4082346, at *16-17 (Haw. Ct. App. July 29, 2016).

In her opposition to the Motion to Enforce, McKenna conceded that she "does not dispute that the October 21, 2014 Settlement Offer was orally accepted by [her] at that proceeding." The record supports this concession.[6] At this point, under an objective standard, there was no indication that McKenna did not intend to be bound to the resulting judgment or dismissal with prejudice. Therefore the agreement was entered into voluntarily and there was a meeting of the minds, and a binding settlement agreement was formed. *See Goran Pleho*, 2016 WL 4082346, at *16-17 (holding that a binding settlement agreement was formed when all the essential terms were placed on the record, the parties indicated that they heard and agreed to all terms, and no essential terms were left to be determined at a later date); *Kekona*, 99 Hawai'i at 134, 53 P.3d at 273 ("[T]he purely subjective, or secret, intent of a party in assenting is irrelevant in an inquiry into the contractual intent of the parties. 'Unexpressed intentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties.'" (quoting *Earl M. Jorgensen Co. v. Mark Constr., Inc.*, 56 Haw.

---

[6] The transcript from the Settlement Conference provides, in relevant part:

> THE COURT: Okay. And my understanding is that the parties have reached a settlement agreement in this case. That the terms of the settlement include -- the essential terms of the settlement agreement are that the [Appellees] shall pay [McKenna] $60,000 in cash. The Association of Apartment Owners of Elima Lani will also release any lien and outstanding amounts owed by Ms. McKenna to the association.
>
> That there be -- it's a general-damages-only release, and that the partes will execute a settlement agreement with mutual releases and standard settlement terms and a dismissal of the case.
>
> Have I accurately stated the settlement agreement from the perspective of the plaintiff, Mr. Ross?
>
> MR. ROSS: Yes, your Honor.
>
> THE COURT: And Ms. McKenna, do you agree to the terms of the settlement?
>
> MS. MCKENNA: Yes.

The dismissal was later clarified as a dismissal with prejudice.

466, 470-71, 540 P.2d 978, 982 (1975))).

The final settlement agreement, which the Circuit Court attached to the February 6, 2015 Order to Enforce, did not materially change the essential terms agreed to at the Settlement Conference, and in fact, included several edits to assure that the agreement was not outside the scope of what was discussed. Therefore, McKenna's remaining arguments are without merit.[7] Furthermore, McKenna fails to show that the settlement agreement was obtained through bad faith, fraud, or other misconduct which would justify rescission of the agreement. *See Mijo*, 87 Hawai'i at 29, 950 P.2d at 1229 (citation omitted). McKenna's second point is therefore without merit.

(3) In her third point of error, McKenna alleges that the Circuit Court erred in enforcing the settlement agreement because Ross and Appellees' counsel, who appeared without Appellees at the Settlement Conference and who insufficiently asserted through oral representation that they had authority to settle on behalf of their clients, lacked authority to settle the case pursuant to HRS section 605-7.[8]

Even if express written consent is absent, settlements are binding where the client ratifies the settlement, either

---

[7]     McKenna's arguments pertaining to provision #12(c) and all other non-essential terms of the agreement and terms that were not contemplated at the time the agreement was placed on the record, like remediation, are without merit. *See Mijo*, 87 Hawai'i at 32, 950 P.2d at 1232 ("A settlement agreement is not invalid because certain details are not worked out, where such details are not essential to the proposal and do not change its terms or purpose."). McKenna's contention that the final settlement agreement and stipulation for dismissal with prejudice were not executed voluntarily because the court clerk, rather than she, provided the signature on the subject documents, is also without merit.  This court has upheld an HRCP Rule 41(a)(1)(B) stipulation for dismissal with prejudice and settlement agreement in which the circuit court ordered the clerk of the court to sign the stipulation on behalf of the party who would not sign it and ordered execution of the agreement. *See e.g., Wright v. Miyake Concrete Accessories, Inc.*, No. CAAP-13-0003274, 2016 WL 6997650, at *10-11, 12 (Haw. Ct. App. Nov. 30, 2016), *reconsideration denied*, 2016 WL 7387378 (Dec. 21, 2016).

[8]     HRS section 605-7 provides:

The practitioners licensed by the supreme court shall have control to judgment and execution, of all suits and defenses confided to them; provided that no practitioner shall have power to compromise, arbitrate, or settle such matters confided to the practitioner, unless upon special authority in writing from the practitioner's client.

Haw. Rev. Stat. § 605-7 (1993).

expressly or implicitly. *Cook v. Sur. Life Ins., Co.*, 79 Hawai'i 403, 411, 903 P.2d 708, 716 (App. 1995) (citing *Scott v. Pilipo*, 25 Haw. 386, 390 (1920)). With regard to the latter, "[a]ny failure on the part of the client to object to an unauthorized act within a reasonable time after becoming aware of it will be construed as a ratification of it." *Id.* (citing *Scott*, 25 Haw. at 390).

Here, none of the Appellees ever objected to the terms of the settlement or asserted that their respective attorneys were not authorized to enter into the settlement. Similarly, Ross' representation to the Circuit Court at the Settlement Conference that he was appearing on behalf of McKenna and McKenna's express approval of the settlement agreement when questioned by the Circuit Court, coupled with her silence following Ross' express approval of the clarified essential terms of the agreement, constitute McKenna's ratification of Ross' authority to settle on her behalf. *See Cobb v. Willis*, 7 Haw.App. 238, 245, 752 P.2d 106, 111 (1988) (determining that because the client appeared with her counsel at the settlement conference and because at the conference the client did not raise any objections, it was presumed that the client's counsel had authority to bind the client). It therefore follows that McKenna's argument pertaining to fraud on the basis that Ross and Appellees' counsel lacked authority to settle is unsubstantiated, and her third point is without merit.

(4) In her final point of error, McKenna essentially reargues her previous points as a basis for finding fraud, undue influence, and duress.[9] To the extent that this point addresses issues implicating settlement authority and the drafting of the final settlement agreement, it is without merit as previously

---

[9] More specifically, McKenna alleges that the Circuit Court erred in enforcing the settlement agreement when Appellees' counsel committed fraud in representing to the Circuit Court that they had full authority to settle the case and Appellees were not present at the Settlement Conference; when Appellees falsely represented to the Circuit Court that the agreement reached on October 21, 2014 was materially the same as the SRA Draft submitted with the Motion to Enforce, that the agreement had been jointly drafted, and that the final settlement agreement was executed without any undue duress placed on McKenna; and when the settlement agreement was not certified or executed within three weeks of the settlement conference.

explained under McKenna's second and third points of error. *See supra.* As to McKenna's claims implicating duress or undue influence, McKenna fails to provide citations to the record or explain how she was subjected to such pressures; rather she baldly asserts that the provision of the settlement agreement stating that the agreement was entered into and executed voluntarily by each party is false. McKenna has therefore failed to demonstrate that Appellees or their counsel committed fraud or other acts of attorney misconduct, and her fourth point of error is without merit.

Therefore, IT IS HEREBY ORDERED that the March 10, 2016 Final Judgment entered by the Circuit Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawaiʻi, June 29, 2018.


On the briefs:

Carol L. McKenna,
Pro Se Plaintiff-Appellant.

Michael W. Moore
(Law Offices of Yeh & Moore)
for Defendant/Cross-Claim
Defendant/Cross-Claimant-
Appellee Ross Andaloro.

Danielle N. Degele-Mathews
(Tom Chee Watts
Degele-Mathews & Yoshida, LLP)
for Defendant/Cross-Claim
Defendant/Cross-Claimant-
Appellee Association of
Apartment Owners of Elima Lani
and Certified Management, Inc.

J. Blaine Rogers
(Alston Hunt Floyd & Ing)
for  Defendant/Cross-Claim
Defendant/Cross-Claimant-
Appellee Wells Fargo Bank, N.A.

Chief Judge

Associate Judge

Associate Judge